## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

JOSEPH N. CHISLEY, JR.      CIVIL ACTION

VERSUS           NO. 12-1261

TERRY TERRELL, WARDEN     SECTION "E"(5)

### REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. §§636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases. Upon review of the entire record, the Court has determined that a federal evidentiary hearing is unnecessary. See 28 U.S.C. §2254(e)(2).[1] For the following reasons, the Court recommends that the instant petition for habeas corpus relief be **DISMISSED WITH PREJUDICE**.

---

[1] Under 28 U.S.C. §2254(e)(2), whether to hold an evidentiary hearing is a statutorily mandated determination. Section 2254(e)(2) authorizes the district court to hold an evidentiary hearing only when the petitioner has shown either that the claim relies on a new, retroactive rule of constitutional law that was previously unavailable, 28 U.S.C. §2254(e)(2)(A)(i), or the claim relies on a factual basis that could not have been previously discovered by exercise of due diligence, 28 U.S.C. §2254(e)(2)(A)(ii); and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner. 28 U.S.C. §2254(e)(2)(B).

I.   <u>FACTUAL AND PROCEDURAL BACKGROUND</u>

The petitioner, Joseph N. Chisley, Jr., is a convicted inmate currently incarcerated in the Allen Correctional Center, Kinder, Louisiana.  On April 28, 2000, Chisley, along with Mark C. Filmore, was charged by bill of information in Jefferson Parish with possessing, on or about April 6, 2000, between 28 and 199 grams of cocaine, in violation of LSA-R.S. 40:967(F).[2]  The Louisiana Fifth Circuit Court of Appeal summarized the facts of the case as follows:

> Agent Dawn Gentner testified that she is assigned to the narcotics division of the Jefferson Parish Sheriff's Office.  More specifically, she is a canine officer.  On April 6, 2000, Agent Gentner and several other officers executed a search warrant at 1310 Claiborne Court in Jefferson, Louisiana.  Gentner applied for and obtained the warrant.  The object of the search was to uncover and seize narcotics.
>
> Sergeant Bruce Harrison was the first officer to enter the house.  Detective Jeff Heggelund followed. Harrison announced that he was a police officer and was there to execute a search warrant.  He testified there were seven people in the living room, located in the front part of the house.  Harrison heard the sounds of activity coming from the back of the house, and he looked down a hallway to see the defendant and Mark Filmore peering at him from the kitchen entryway.  Harrison ordered the men into the hallway, and they complied. Heggelund secured the two men for safety reasons, placing them in handcuffs in the hallway.
>
> Harrison then entered the kitchen and saw, in plain view, a large amount of what appeared to be crack cocaine on a dinner plate on the floor.  He estimated that the material on the plate weighed 40 grams.  There was also about 60 grams of crack in a clear plastic bag on the table.  Harrison testified that some of the crack was cut

---

[2]St. Rec. Vol. 1 of 8, tab 1.  Chisley was tried separately.

into individual dosage units, and larger pieces were being prepared for cutting. There was also a scale in the kitchen, which Harrison believed was being used to weigh the crack. Harrison seized the plate and the crack it contained, as well as the crack on the table and the scale.

Sergeant Harrison informed Detective Heggelund of his findings, and Heggelund placed the defendant and Filmore under arrest. In the hallway, Heggelund searched the defendant's person incident to arrest. He recovered, from the defendant's pants pocket, four pieces of crack cocaine wrapped in a napkin. Heggelund then collected personal information from the defendant following the arrest, and the defendant told him that his address was 1310 Claiborne Court.

Agent Gentner and her canine were the last to enter the house. When Gentner attempted to check the area in back of the house for contraband, she encountered an aggressive pit bull. The defendant told her the dog in the yard was his, and he attempted to assist Gentner by removing the dog. The dog broke loose and tried to attack the officers. However, the defendant managed to catch the dog and secure it. Gentner testified that she field-tested the substance found in the kitchen, and the result was positive for cocaine.

Edgar Dunn, a forensic chemist with the Jefferson Parish Sheriff's Office, was accepted by the court as an expert in forensic chemistry and analysis of controlled dangerous substances. He testified that he tested the rock-like material seized in the instant case, and that it was positive for cocaine. He further testified that the weight of the cocaine found on the plate was 42.52 grams, the cocaine from the kitchen table weighed 60.66 grams, and the pieces of crack seized from defendant weighed .61 grams.

Defense witnesses Troy Powell, Mary Filmore, Joseph Louis Chisley and Dianne Chisley all testified that they were at the Claiborne Court house when the police arrived. Ms. Powell, the defendant's wife, testified she was outside of the house. She saw an officer search the defendant on the front porch, and the officer did not find any contraband. Ms. Filmore, who is Mark Filmore's wife and the defendant's sister, testified she was in the living room when police arrived. She stated that she saw the defendant emerge from a bedroom, not the kitchen. She further testified that she saw the officers search the defendant outside, not in the hallway. Joseph Louis

3

> Chisley, the defendant's brother, testified he was in the living room when police entered. He also saw the defendant exit a bedroom, and did not see an officer search the defendant. Ms. Chisley, the defendant's sister-in-law, was inside the house when the officers arrived. She saw them arrest the defendant, and testified that the defendant was searched outside the house.

State v. Chisley, 860 So.2d 45, 47-48 (La. App. 5th Cir. 10/15/03); State Record Volume 7 of 8, Louisiana Fifth Circuit Court of Appeal Opinion, 2003-KA-0426.

On August 15, 2001, Chisley was tried before a jury in the Twenty-Fourth Judicial District Court for the Parish of Jefferson, State of Louisiana.[3] On that same date, Chisley was found guilty as charged.[4] On April 22, 2002, the state trial court sentenced Chisley to imprisonment at hard labor for a term of 15 years with the first five years to be served without benefit of parole, probation, or suspension of sentence.[5] On that same date, the State filed a multiple offender bill of information charging that Chisley was a third felony offender and Chisley pled guilty to being a second felony offender.[6] Thereafter, the trial court

---

[3] St. Rec. Vol. 3 of 8, tab 3

[4] St. Rec. Vol. 3 of 8, Guilty Verdict

[5] St. Rec. Vol. 3 of 8, tab 4.

[6] St. Rec. Vol. 3 of 8, tabs 5 and 6.

4

vacated Chisley's original sentence and resentenced Chisley "to imprisonment at hard labor for a term of 20 years."[7]

On October 15, 2003, the Louisiana Fifth Circuit Court of Appeal affirmed Chisley's conviction, but vacated the habitual offender sentence as illegally lenient, noting that under applicable law, Chisley, "[a]s a second felony offender," "should have received a sentence of at least 30 years, without benefit of probation or suspension of sentence, and without the benefit of parole for at least the first ten years of the sentence."[8] The state appellate court vacated Chisley's illegally lenient sentence and remanded the matter to the trial court for resentencing, reserving Chisley's right to withdraw his guilty plea as a second felony offender.[9]  Chisley filed a writ application with the Louisiana Supreme Court which was denied on April 2, 2004.[10]

Pursuant to the Louisiana Fifth Circuit's remand, on April 13, 2004, Chisley withdrew his prior multiple bill plea and the matter was set for a multiple bill hearing.[11]  On February 24, 2006, a

---

[7]St. Rec. Vol. 3 of 8, tab 6.

[8]State v. Chisley, 860 So.2d 45, 50 (La. App. 5th Cir. 10/15/03).

[9]Id. at 50-51.

[10]State v. Chisley, 869 So.2d 874 (La. 2004); St. Rec. Vol. 3 of 8, No. 2003-KO-3358.

[11]St. Rec. Vol. 3 of 8, tab 7.

multiple bill hearing was held and Chisley was found to be a third felony offender.[12]   On March 9, 2006, the State offered a stipulation that Chisley was a second felony offender and the defense accepted the stipulation.  On that same date, the district court vacated Chisley's sentence and resentenced him under the multiple bill statute "to imprisonment at hard labor for a term of 30 years" without benefit of probation or suspension of sentence for the entire term, without benefit of parole for the first ten years, and with credit for time served.[13]

On April 24, 2007, pursuant to Chisley's "second appeal," the Louisiana Fifth Circuit affirmed his habitual offender adjudication and corresponding sentence.[14]   On June 6, 2008, the Louisiana Supreme Court denied Chisley's writ application.[15]

Chisley's conviction became final 90 days later, on September 4, 2008, when he did not file a writ application with the United States Supreme Court.  Ott v. Johnson, 192 F.3d 510, 513 (5th Cir. 1999) (period for filing for certiorari with the United States Supreme Court is considered in the finality determination under 28

---

[12]St. Rec. Vol. 3 of 8, tab 8.

[13]St. Rec. Vol. 4 of 8, tab 9.

[14]State v. Chisley, 957 So.2d 226 (La. App. 5th Cir. 4/24/07); St. Rec. Vol. 7 of 8, No. 2006-KA-900.

[15]State ex rel. Chisley v. State, 983 So.2d 911 (La. 2008); St. Rec. Vol. 7 of 8, No. 2007-KH-1828.

U.S.C. § 2244(d)(1)(A)), <u>cert. denied</u>, 529 U.S. 1099 (2000); U.S.
Sup. Ct. Rule 13(1).

On April 19, 2007, while his "second appeal" was pending,
Chisley filed with the state district court an application for writ
of habeas corpus.[16]   On April 30, 2007, the state district court
denied relief.[17]  Chisley did not seek relief in connection with the
district court's adverse decision.

On July 15, 2008, Chisley filed an application for writ of
certiorari with the Louisiana Supreme Court, challenging the
Louisiana Fifth Circuit Court of Appeal's denial of pro se writ
applications during the period from February 8, 1994 to May 21,
2007, arguing that internal operating procedures of the Louisiana
Fifth Circuit Court of Appeal deprived him of legal review of his
claims.[18]   On October 10, 2008, the Louisiana Supreme Court
transferred the application to the Louisiana Fifth Circuit "for
consideration pursuant to the procedures outlined in that court's
<u>en banc</u> resolution of September 9, 2008. <u>See</u> <u>State v. Cordero</u>, 08-

---

[16]St. Rec. Vol. 4 of 8, tab 13.

[17]St. Rec. Vol. 4 of 8, tab 14.

[18]St. Rec. Vol. 8 of 8, tab 22.  Chisley filed only one pro se
writ application during the pertinent time period.  Chisley filed
a writ of mandamus charging that the district court had failed to
rule on his motions for production of documents.  The Louisiana
Fifth Circuit denied Chisley's writ application as moot in light of
the fact that the district court had ruled on Chisley's motions.
<u>State v. Chisley</u>, No. 2007-KH-0140 (La. App. 5th Cir. 3/12/07); St.
Rec. Vol. 8 of 8.

1717 (La. 10-03-08), 993 So.2d 203."[19]  On September 22, 2009, the Louisiana Fifth Circuit, having reconsidered its ruling on Chisley's writ of mandamus, determined that there was no error in its previous ruling and, as such, denied relief.[20]

On March 16, 2011, Chisley filed with the state district court a motion to correct an illegal sentence, complaining that the specification that his habitual offender sentence be served "at hard labor" was violative of Louisiana's habitual offender statute, LSA-R.S. 15:529.1.[21]  On April 26, 2011, the district court denied Chisley's motion noting that Chisley's underlying conviction under LSA-R.S. 40:967(F) provides for a sentence to be served "at hard labor."[22]  On June 16, 2011, the Louisiana Fifth Circuit denied Chisley's subsequent writ application, providing:  "When a defendant is sentenced as a habitual offender, the penalty increase is computed by reference to the sentencing provision of the underlying offense.  In addition, the conditions imposed on the sentence are those called for in the referenced statute."[23]  On

---

[19]State ex rel. Chisley v. State, 993 So.2d 1212 (La. 2008).

[20]State ex rel. Chisley v. State, No. 2008-WR-1010 (La. App. 5th Cir. 9/22/09); St. Rec. Vol. 8 of 8, tab 25.

[21]St. Rec. Vol. 4 of 8, tab 16.

[22]St. Rec. Vol. 4 of 8, tab 18.

[23]State v. Chisley, No. 2011-KH-0580 (La. App. 5th Cir. 6/16/11) (citation omitted); St. Rec. Vol. 8 of 8, tab 24.

April 9, 2012, the Louisiana Supreme Court denied Chisley's related writ application without stated reasons.[24]

II.  <u>FEDERAL HABEAS PETITION</u>

On May 7, 2012, Chisley filed the instant petition for federal habeas corpus relief asserting the same claim raised in his motion to correct an illegal sentence, namely, that the imposed sentence, specifying that it be served "at hard labor," is illegal because it is violative of Louisiana's habitual offender statute.

In its response, the State concedes that Chisley has exhausted his state court remedies, but asserts that Chisley's petition is untimely and that his "sole claim does not present a federal question."[25]

III.  <u>GENERAL STANDARDS OF REVIEW</u>

The AEDPA comprehensively revised federal habeas corpus legislation, including 28 U.S.C. §2254.  The AEDPA went into effect on April 24, 1996[26] and applies to habeas petitions filed after that

---

[24]<u>State ex rel. Chisley v. State</u>, 85 So.3d 134 (La. 2012)

[25]Rec. Doc. No. 13, p. 7.

[26]The AEDPA, which was signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments.  Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law.  <u>United States v. Sherrod</u>, 964 F.2d 1501, 1505 (5th Cir. 1992).

date.  <u>Flanagan v. Johnson</u>, 154 F.3d 196, 198 (5th Cir. 1998) (citing <u>Lindh v. Murphy</u>, 521 U.S. 320 (1997)).  The AEDPA therefore applies to Chisley's petition.

The threshold questions in habeas review under the amended statute are whether the petition is timely and whether the claims raised by the petitioner were adjudicated on the merits in state court; <u>i.e.</u>, the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim. <u>Nobles v. Johnson</u>, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

The State argues that Chisley's habeas petition is untimely because Chisley's Louisiana Supreme Court writ application, No. 2007-KH-1828, filed in connection with his "second appeal," was untimely and, therefore, did not toll prescription.[27]  For the following reasons, the Court disagrees.

The Louisiana Fifth Circuit affirmed Chisley's habitual offender adjudication and corresponidng sentence.  Chisley had 30 days within which to file a writ application with the Louisiana Supreme Court.[28]  It is undisputed that Chisley submitted to the Louisiana Supreme Court an application for an extension of time to

---

[27]<u>See</u> Rec. Doc. No. 13, pp. 10-11.

[28]<u>See</u> Louisiana Supreme Court Rule X, §5(a).

file his writ application.[29]   Although the rules of the Louisiana

Supreme Court expressly provide that no such extensions will be

granted, Chisley was nevertheless granted such an extension.   As

the State represents, the Louisiana Supreme Court Central Staff

issued a letter to Chisley advising that a motion for an extension

was not necessary and that he was to submit his writ application as

soon as he was able to do so.[30] Because the Louisiana Supreme Court

essentially notified Chisley that he had been granted an extension

of time, Chisley filed his writ application within the indefinitely

extended deadline, and there is no indication that his writ

application was dismissed as untimely, this Court, acting out of an

abundance of caution, declines to find Chisley's Louisiana Supreme

Court writ application to be untimely filed so as to adversely

affect the date on which his habitual offender adjudication and

sentence became final.   See Hill v. Cooper, 2007 WL 458207, at *2

n.23 (E.D. La. 2/8/10); see also Harvey v. Andrews, 2010 WL 744944,

at *4-5 (E.D. La. 2/26/10).   Moreover, in any event, the resolution

of this issue is not critical in the instant case, because

Chisley's federal habeas petition is untimely regardless of whether

his conviction was final 30 days after the Louisiana Fifth

---

[29]See Rec. Doc. No. 13, p. 10 n. 27.

[30]Id.

11

Circuit's judgment or 90 days after the Louisiana Supreme Court's
judgment.

IV.  <u>STATUTE OF LIMITATIONS</u>

The AEDPA requires a petitioner to bring his Section 2254
petition within one year of the date his conviction became final.[31]
<u>Duncan v. Walker</u>, 533 U.S. 167, 179-80 (2001).  In this case
Chisley's conviction was final on September 4, 2008.  Thus, under
a literal application of the statute, Chisley had one year from the
date his conviction became final, or until September 4, 2009, to
file his federal habeas corpus petition, which he did not do.  His

---

[31]The statute of limitations provision of the AEDPA provides
for other triggers which do not apply here:
(1) A 1-year period of limitation shall apply to an application for
a writ of habeas corpus by a person in custody pursuant to the
judgment of a State court. The limitation period shall run from the
latest of—

A. the date on which the judgment became final by the conclusion of
direct review or the expiration of the time for seeking such
review;
B. the date on which the impediment to filing an application
created by State action in violation of the Constitution or laws of
the United States is removed, if the applicant was prevented from
filing by such State actions;
C. the date on which the constitutional right asserted was
initially recognized by the Supreme Court, if the right has been
newly recognized by the Supreme Court and made retroactively
applicable to cases on collateral review; or
D. the date on which the factual predicate of the claim or claims
presented could have been discovered through the exercise of due
diligence.

(2) The time during which a properly filed application for State
post-conviction or other collateral review with respect to the
pertinent judgment or claim is pending shall not be counted toward
any period of limitation under this subsection. 28 U.S.C. §2244(d).

petition must be dismissed as untimely, unless the one-year statute of limitations period was interrupted or otherwise tolled in either of the following two ways recognized in the applicable law.

First, the United States Supreme Court has held that the one-year statute of limitations period in Section 2244(d)(1) of the AEDPA may be equitably tolled only when the petitioner has pursued his rights diligently and rare or extraordinary circumstances exist which prevented timely filing. Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005); Fisher v. Johnson, 174 F.3d 710, 713 (5th Cir.1999), cert. denied, 531 U.S. 1164 (2001); Cantu-Tzin v. Johnson, 162 F.3d 295, 299 (5th Cir.1998); Davis v. Johnson, 158 F.3d 806, 810 (5th Cir.1998), cert. denied, 526 U.S. 1074 (1999). Equitable tolling is warranted only in situations where the petitioner was actively misled or is prevented in some extraordinary way from asserting his rights. Pace, 544 U.S. at 418–19.

Chisley has not asserted any reason that might constitute rare or exceptional circumstances why the one-year period should be considered equitably tolled, and the Court's review of the record reveals none that might fit the restrictive boundaries of "exceptional circumstances" described in recent decisions. See Holland v. Florida, 130 S.Ct. 2549, 2574–75 (2010) (equitable tolling was warranted where attorney was more than negligent when he failed to satisfy professional standards of care by ignoring the client's requests to file a timely federal petition and in failing

13

to communicate with the client during a period of years in spite of the client's letters); Hardy v. Quarterman, 577 F.3d 596, 599-600 (5th Cir.2009) (equitable tolling was warranted where petitioner suffered a significant state-created delay when, for nearly one year, the state appeals court failed in its duty under Texas law to inform him that his state habeas petition had been denied, petitioner diligently pursued federal habeas relief, and he persistently inquired to the court.); United States v. Wynn, 292 F.3d 226 (5th Cir.2002) (tolling warranted when defendant was deceived by attorney into believing that a timely motion to vacate was filed); Coleman v. Johnson, 184 F.3d 398, 402 (5th Cir.1999), cert. denied, 529 U.S. 1057 (2000) ("A garden variety claim of excusable neglect does not support equitable tolling."); Fisher, 174 F.3d at 715 (tolling not justified during petitioner's 17-day stay in psychiatric ward, during which he was confined, medicated, separated from his glasses and thus rendered legally blind, and denied meaningful access to the courts); Cantu-Tzin, 162 F.3d at 300 (State's alleged failure to appoint competent habeas counsel did not justify tolling); Davis, 158 F.3d at 808 n.2 (assuming without deciding that equitable tolling was warranted when federal district court three times extended petitioner's deadline to file habeas corpus petition beyond expiration of AEDPA grace period).

In addition to equitable tolling, the AEDPA itself provides for interruption of the one-year limitations period, in stating

14

that "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." 28 U.S.C. §2244(d)(2). By its plain language, this provision does not create a new, full, one-year term within which a federal habeas petition may be filed at the conclusion of state court post-conviction proceedings. Flanagan, 154 F.3d at 199 n.1. The Supreme Court has clearly described this provision as a tolling statute. Duncan, 533 U.S. at 175-178.

The decisions of the Fifth Circuit and other federal courts cited herein have held that because this statute is a tolling provision, the time during which state court post-conviction proceedings are pending must merely be subtracted from the one-year limitations period:

> [Section] 2244(d)(2) provides that the period during which a properly filed state habeas application is pending must be excluded when calculating the one[-]year period. Under the plain language of the statute, any time that passed between the time that [petitioner's] conviction became final and the time that his state application for habeas corpus was properly filed must be counted against the one[-]year period of limitation.

Flanagan, 154 F.3d at 199 n.1; accord Brisbane v. Beshears, 161 F.3d 1, 1998 WL 609926 at *1 (4th Cir. Aug. 27, 1998) (Table, Text in Westlaw); Gray v. Waters, 26 F.Supp.2d 771, 771-72 (D.Md.1998).

15

For a post-conviction application to be considered "properly filed" within the meaning of Section 2244(d)(2), the applicant must "'conform with a state's applicable procedural filing requirements,'" such as timeliness and location of filing.  Pace, 544 U.S. at 414 ("When a postconviction application is untimely under state law, 'that [is] the end of the matter' for purposes of § 2244(d)(2)"); Williams v. Cain, 217 F.3d 303, 306-307 n.4 (5th Cir.2000) (quoting Villegas v. Johnson, 184 F.3d 467, 469 (5th Cir.1999)); Smith v. Ward, 209 F.3d 383, 384-85 (5th Cir.2000). The timeliness consideration in Louisiana, for purposes of the AEDPA, requires application of a prison mailbox rule to state pleadings.  Causey v. Cain, 450 F.3d 601, 604-05 (5th Cir.2006).

A matter is "pending" for Section 2244(d)(2) purposes "as long as the ordinary state collateral review process is 'in continuance.'"  Carey v. Saffold, 536 U.S. 214, 219-20 (2002); Williams, 217 F.3d at 310 (a matter is "pending" for Section 2244(d)(2) purposes until "'further appellate review [is] unavailable under [Louisiana's] procedures.' ")

The phrase "other collateral review" in the statute refers to state court proceedings challenging the pertinent judgment subsequently challenged in the federal habeas petition.  Dillworth v. Johnson, 215 F.3d 497, 501 (5th Cir.2000) (state habeas petition challenging a prior conviction in one county was other collateral review even though filed as a challenge to a second conviction in

16

a different county); Nara v. Frank, 2001 WL 995164, slip opinion at *5 (3rd Cir. Aug. 30, 2001) (motion to withdraw a guilty plea is "other collateral review").   A "pertinent judgment or claim" requires that the state filings for which tolling is sought must have challenged the same conviction being challenged in the federal habeas corpus petition and must have addressed the same substantive claims now being raised in the federal habeas corpus petition. Godfrey v. Dretke, 396 F.3d 681, 686-88 (5th Cir. 2005).

The one-year AEDPA limitations period did not commence to run in Chisley's case until September 23, 2009, the day after his Cordero-based challenge concluded.[32]   At that point, the limitations period ran uninterrupted for 365 days, until September 23, 2010, when it expired.   It was not until over five months later, on March 16, 2011, that Chisley sought collateral review, filing a motion to correct an illegal sentence with the state district court.[33]   A filing made after the AEDPA filing period has expired does not afford Chisley any tolling.   See Scott v. Johnson, 227 F.3d 260, 263 (5th Cir. 2000).

Even if the instant petition was not time-barred, Chisley would not be entitled to habeas relief.   As noted, Chisley is claiming that the specification that his sentence be served "at

---

[32] See supra at pp. 7-8.

[33] See supra at p. 8.

17

hard labor" is violative of state law.  Chisley asserts that his sentence is violative of Louisiana's habitual offender statute, LSA-R.S. 15:529.1., which does not provide a sentencing court with "the authority to impose any sentence, <u>at hard labor</u>."[34]

A federal court does "not sit as [a] 'super' state supreme court in a habeas corpus proceeding to review errors under state law." <u>Wilkerson v. Whitley</u>, 16 F.3d 64, 67 (5th Cir. 1994) (quotation omitted); <u>see also</u> <u>Swarthout v. Cooke</u>, __ U.S. __, 131 S. Ct. 859, 861 (2011) (federal habeas review does not lie for errors of state law).  This Court's analysis focuses instead on due process considerations, and due process requires that the Court grant habeas relief when the errors of the state court make the underlying proceeding fundamentally unfair. <u>Neyland v. Blackburn</u>, 785 F.2d 1283, 1293 (5th Cir. 1986).

Chisley's contention that the trial court, in specifying that his sentence was to be served "at hard labor," ran afoul of state law is not the concern of federal habeas review. <u>Butler v. Cain</u>, 327 Fed. Appx. 455, 457 (5th Cir. 2009).  Instead, federal courts accord broad discretion to a state trial court's sentencing decision.  In this case, the state courts, in rejecting the instant claim, specifically noted that the statute for which Chisley was convicted, LSA-R.S. 40:967(F), provides for a sentence to be served

---

[34]Rec. Doc. No. 4, p. 16 (emphasis original).

18

at hard labor.  On April 6, 2000, the date the underlying offense was committed, LSA-R.S. 40:967(F)(1)(a) in pertinent part provided: "Any person who knowingly or intentionally possesses twenty-eight grams or more, but less than two hundred grams, of cocaine . . . shall be sentenced to serve a term of imprisonment <u>at hard labor</u> of not less than ten years, nor more than sixty years . . . [emphasis added]."

If a sentence is within the statutory limits, a federal habeas court will not upset the terms of the sentence unless it is grossly disproportionate to the gravity of the offense.  <u>Harmelin v. Michigan</u>, 501 U.S. 957 (1991); <u>Solem v. Helm</u>, 463 U.S. 277 (1983). If the sentence is not "grossly disproportionate," however, in the first instance, the inquiry is finished.  <u>United States v. Gonzales</u>, 121 F.3d 928 (5th Cir.1997), <u>cert. denied</u>, 522 U.S. 1063 (1998).  As the Supreme Court has noted, outside the context of capital punishment, successful proportionality challenges are "exceedingly rare", and constitutional violations are sustained in only "extreme" or "extraordinary" cases.  <u>Ewing</u>, 538 U.S. at 23-30 (citations omitted); <u>Lockyer v. Andrade</u>, 538 U.S. 63 (2003).

Chisley was sentenced to 30 years incarceration at hard labor. As reflected above, even if Chisley had been a first offender convicted of possessing 28 grams but less than 200 grams of cocaine, he was subject to a <u>60 year sentence at hard labor</u>. Chisley, as a second offender, faced a maximum sentence of <u>120</u>

19

years.[35]  Thus, Chisley's 30 year prison sentence at hard labor was clearly within the state statutory limits.

Chisley has not shown that his 30 year sentence at hard labor was grossly disproportionate or unconstitutionally excessive in light of the crime for which he was convicted.  It appears that the sentence was entirely appropriate given that Chisley was a second offender.

### RECOMMENDATION

For the foregoing reasons, it is **RECOMMENDED** that the petition of Joseph N. Chisley, Jr., for issuance of a writ of habeas corpus under 28 U.S.C. §2254 be **DISMISSED WITH PREJUDICE.**

A party's failure to file written objections to the proposed findings, conclusions, and recommendation contained in a magistrate judge's report and recommendation within fourteen days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  Douglass v. United Services Auto. Assoc., 79 F.3d 1415 (5th Cir. 1996)(en

---

[35]Under the habitual offender statute, LSA-R.S. 15:529.1(A)(1), the maximum sentence was "twice the longest term prescribed for a first conviction."

banc).

    New Orleans, Louisiana, this __20th__ day of __June__, 2013.

                                        ALMA L. CHASEZ
                    UNITED STATES MAGISTRATE JUDGE